

**SIGNED this 21st day of February, 2014**

_____

Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

VINCENT PERRY MORSE and                         No. 13-13188
MARY LYNN MORSE,                                Chapter 7

       Debtors;

JARED SMITH

       Plaintiff,

v.

                                Adversary Proceeding
                                No. 13-1117

VINCENT PERRY MORSE and
MARY LYNN MORSE,

       Defendants.

*Appearances for Jared Smith*

       Cara J. Alday
       Patrick, Beard, Schulman & Jacoway
       537 Market Street, Suite 202
       Chattanooga, TN 37402

*Appearances for the Debtors*

>   Buddy B. Presley, Jr.
>   Presley & Simonds
>   1612 Gunbarrel Road
>   Suite 102
>   Chattanooga, TN 37421

## MEMORANDUM

Plaintiff Jared Smith ("Plaintiff") has filed this adversary proceeding against defendant debtors Vincent Perry Morse and Mary Lynn Morse (collectively "Defendants" or "Debtors") seeking a judgment from this court that a debt in the amount of $100,000 is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6) and 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A), and 727(a)(5). [Doc. No. 1, Complaint].[1] The Plaintiff further seeks interest and attorneys' fees. The Defendants have filed a motion to dismiss the entire Complaint pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 7012. [Doc. No. 7]. The Plaintiff opposes the motion to dismiss. [Doc. No. 11].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The court concludes that it will deny the motion to dismiss in part and grant it in part.

## I.    Background Facts

In his Complaint the Plaintiff alleges the following facts:

> Plaintiff Smith, a creditor of Debtors, is a resident of Hamilton County, Tennessee. Smith loaned money to Deck Masters, Inc., a company owned by Debtors. The loan was guaranteed personally by the Debtors.

> Defendant Vincent Morse was the President and 51% shareholder of Deck Masters, Inc. and is a Debtor in the above-captioned proceeding.

---

[1] All docket entry references refer to docket entries for Adversary Proceeding 13-1117, unless otherwise noted.

Defendant Mary L. Morse is married to Vincent Morse and was the Secretary and 49% shareholder of Deck Masters, Inc.

. . . .

Smith and Defendant Vincent Morse were acquaintances via Smith's car wash located in Hamilton County, Tennessee on Gunbarrel Road. Defendant Vincent Morse had used Plaintiff Smith's car wash for several years.

Plaintiff Smith and Defendant Vincent Morse had discussions about Defendant Vincent Morse's development projects and Plaintiff Smith's interest in possibly developing homes.

In 2012, Defendant Vincent Morse asked Plaintiff Smith to loan money to him for the purpose of starting a development project in North Chattanooga on Dallas Road called Perry North. Plaintiff Smith was not comfortable with loaning money for this project and said no.

Defendant Vincent Morse then advised Plaintiff Smith that he had a development project under development in East Ridge, Tennessee known as Perry Village. Defendant Morse already owned the land in the name of Deck Masters, Inc. Defendant Morse represented to Plaintiff Smith that he already had a buyer who wanted a custom house built in Perry Village, and if Smith would loan $100,000.00 for the purpose of building the specific house at 902 Geswein Court they would split the profit from the sale of the house. Defendant Vincent Morse represented to Smith that he wanted Smith's money to build this particular house as opposed to getting a bank loan because Morse could build it faster than he could if he had to go to the bank for draws. Defendant Vincent Morse assured Smith there was equity in the house and being repaid was a sure thing.

Based upon the representations of Defendant Vincent Morse, Plaintiff Smith loaned $100,000.00 to Defendant Morse for Deck Masters, Inc. for the sole purpose to build the house located at 902 Geswein Court, Chattanooga, Tennessee 37412. . . . To evidence the loan, Defendants Vincent and Mary Morse signed an Installment Note with Balloon Payment individually and on behalf of Deck Masters, Inc. wherein the Morses agreed to repay Smith $100,000.00 plus one-half of the net proceeds from the sale of 902 Geswein Court (the "Note"). . . . The Note also provides "If this note is placed in the hands of an attorney for collection by suit or otherwise, or to protect the security for its payment, We/I will pay all reasonable costs of collection and litigation, together with a reasonable attorney's fee."

Unbeknownst to Smith, Defendant Vincent Morse did not use the loaned funds to build 902 Geswein Court. Instead, Defendant Vincent Morse transferred funds immediately to himself and also used funds to pay debts of Deck Masters, Inc. on

projects other than the house at 902 Geswein Court, and for personal expenditures.

Defendant Vincent Morse, within days of receiving Smith's loan, obtained a construction loan for 902 Geswein Court. In addition, during the construction of the house at 902 Geswein Court, Defendant Vincent Morse failed to pay subcontractors resulting in several liens on the property.

The property and house located at 902 Geswein Court has since been foreclosed upon by First Volunteer Bank. There was no equity in the property.

Debtors Morse filed a Chapter 7 bankruptcy petition on July 26, 2013.

In the § 341 meeting of Debtors Morse, Defendant Vincent Morse testified under oath that Plaintiff Smith loaned him $100,000.00 as an investment in Deck Masters, Inc. in general and not for any certain project or property. Defendant Vincent Morse, under oath, was unable to explain satisfactorily where the funds he obtained fraudulently from Plaintiff Smith went. Defendant Vincent Morse, under oath, was unable to explain what certain payments made immediately after Smith's funds went into Deck Master, Inc.'s bank account were for, including but not limited to a $30,000.00 cashier's check to Vincent Morse personally on August 30, 2012, a $31,000.00 cashier's check on August 30, 2012 with notations to Basic Concrete for $10,000.00 and Check's Lumber for $21,000.10, and a cashier's check on August 31, 2012 for $8,500.00 with a reference to Case Concrete. Defendant Vincent Morse, under oath, was unable to explain transfers between Deck Masters, Inc.'s accounts to him personally and transfers to North Chattanooga Enterprises, LLC's accounts (of which Defendant Vincent Morse was a member). In addition, despite repeated requests for documentation, such as invoices, to support alleged payments to suppliers using Smith's funds, Defendant Vincent Morse has been unable to produce such documents.

Complaint, ¶¶ 1-3, 6-15. Attached as Exhibit A to the Complaint are copies of two checks each made out to "Deck Masters, Inc." ("Deck Masters") in the amount of $50,000. [Doc. No. 1-1, Ex. A]. Exhibit B attached to the Complaint is a copy of an "Installment Note with Balloon Payment" ("Note") dated August 29, 2012 in the amount of $100,000. [Doc. No. 1-1, Ex. B].

The Note states in part that:

FOR VALUE RECEIVED, the undersigned promises to pay to the order of JARED SMITH, the sum of ONE HUNDRED THOUSAND Dollars ($100,000.00), PLUS ONE-HALF (1/2) OF THE NET PROCEEDS OF THE SALE OF THE PROPERTY COMMONLY KNOWN AS 902 GESWEIN COURT, 37412, . . .

> The net proceeds (the sales price fro[m] the property minus expenses) of the sale
> shall be the amount of money due to the Seller on a settlement statement for the
> sale of the property. The settlement statement must be approved by Jared Smith or
> his assigns. Payment in full must be mailed to Jared Smith or his assigns within
> three business days of the closing. . . .
> If the said property has not been sold within 365 days of the execution of this
> note, then a balloon payment of $120,000.00 is immediately due and payable
> from the undersigned to Jared Smith or his assigns to satisfy this note in full. . . .

*Id.*

## II.    Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this

district provide this court with jurisdiction to hear and decide this adversary proceeding.  The

Plaintiff's action regarding the dischargeability of particular debts is a core proceeding.  *See* 28

U.S.C. § 157(b)(2)(I).

## III.    Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil

Procedure 12(b) applies to adversary proceedings. *See* Fed. R. Bankr. P. 7012(b). Federal Rule of

Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a

claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "treat as true all of the

well-pleaded allegations of the complaint." *Bower v. Federal Express Corp.*, 96 F.3d 200, 203

(6th Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to

the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th

Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955,

1969 (2007). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quotation omitted). The court will thus review the motion to dismiss by assuming the facts as alleged by the Plaintiffs.

IV.    **Analysis**

A.    **The Plaintiff's Section 523(a) Claims**

11 U.S.C. § 727 provides for the discharge of an individual from any specific debt unless that debt is excepted from discharge pursuant to 11 U.S.C. § 523. 11 U.S.C. § 727(a)-(b). The creditor must prove by a preponderance of the evidence that its debt is non-dischargeable under 11 U.S.C. § 523. *See Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659 (1991). Exceptions to discharge are narrowly construed in the debtor's favor. *See Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (B.A.P. 6th Cir. 2004).

1.    **Section 523(a)(2)(A)**

11 U.S.C. § 523(a)(2)(A) prohibits discharges of debt based on "(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . ." The Sixth Circuit has held that to demonstrate nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), a creditor must prove four elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). A creditor bears the burden of demonstrating these elements by a preponderance of the evidence. *Id.* at 281 (relying on *Grogan*, 498 U.S. at 291, 111 S.Ct. at 661).

6

a.      **Section 523(a)(2)(A) Claim Against Mr. Morse**

Here the court finds that a specific false statement has been alleged. Mr. Morse said he was not going to obtain a bank loan. He was going to use Mr. Smith's $100,000 to build the house at 902 Geswein Court.

The court concludes that the Plaintiff has adequately stated a claim of nondischargeability of a debt pursuant to Section 523(a)(2)(A). The Plaintiff has alleged that he extended credit to the Defendant Mr. Morse. He has provided an exhibit demonstrating the provision of credit in the amount of $100,000 to Deck Masters and the Morses. [Doc. No. 1-1, Ex. A]. He has further alleged that the Defendant Mr. Morse obtained the credit by making a false representation about the intent to use the $100,000 to build a residence at 902 Geswein Court. The Plaintiff has attached a copy of the Note relating to building a home at 902 Geswein Court to his Complaint as Exhibit B. [Doc. No. 1-1, Ex. B]. Further, the Plaintiff has asserted that instead of using the $100,000 to fund the construction of the residence at Geswein Court, Mr. Morse obtained a construction loan for the Geswein Court property. *See* Complaint, ¶ 12. The Complaint further alleges that "[u]nbeknownst to Smith, Defendant Vincent Morse did not use the loaned funds to build 902 Geswein Court. Instead, Defendant Vincent Morse transferred funds immediately to himself and also used funds to pay debts of Deck Masters, Inc. on projects other than the house at 902 Geswein Court, and for personal expenditures." Complaint, ¶ 11. The Complaint finally alleges that the lender foreclosed, thereby destroying any prospect for Mr. Smith to recover any funds from Mr. Morse's sale of the house.

The Complaint also sufficiently alleges that the Plaintiff relied on Mr. Morse's representations. It states that "[b]ased upon the representations of Defendant Vincent Morse, Plaintiff Smith loaned $100,000.00 to Defendant Morse for Deck Masters, Inc. for the sole

7

purpose to build the house located at 902 Geswein Court, Chattanooga, Tennessee 37412."

Complaint, ¶ 10. This allegation is sufficient to satisfy the third element of a Section

523(a)(2)(A) claim. The Plaintiff further asserts that his reliance on the Defendant Mr. Morse's

statements regarding the financing for the house and the Defendants' willingness to provide the

Plaintiff with the Note was the proximate cause of the loss of $100,000. This satisfies the fourth

element of the Section 523(a)(2)(A) claim. The court therefore will deny the Defendants' motion

to dismiss the Plaintiff's Section 523(a)(2)(A) claim against Mr. Morse.

### b.    Section 523(a)(2)(A) Claim Against Mrs. Morse

The court concludes that with respect to the Section 523(a)(2)(A) claim against Mrs.

Morse, the Plaintiff has failed to allege facts sufficient to support the elements of such claim

against her. The only evidence of Mrs. Morse's involvement in the loan from the Plaintiff is her

signature on the Note. There is no allegation of any representations that she made, any

knowledge of a scheme to deceive the Plaintiff or even her presence at any of the discussions

involving the loan. Therefore, the court will dismiss the Section 523(a)(2)(A) claim against Mrs.

Morse. The Defendants' motion will be granted with respect to this claim against Mrs. Morse.

### 2.    Non-dischargeability Pursuant to 523(a)(4)

11 U.S.C. § 523(a)(4) states in relevant part: "A discharge under section . . . 727 of this

title does not discharge an individual debtor from any debt − . . . (4) for fraud or defalcation

while acting in a fiduciary capacity, embezzlement, or larceny; . . . ." 11 U.S.C. § 523(a)(4).

Federal common law will determine the meaning of the terms in Section 523(a)(4). *See*

*SmithKline Beecham Corp. v. Lam (In re Lam)*, No. 06-68805-MGD, 2008 WL 7842072, at *3

(Bankr. N.D. Ga. Mar. 27, 2008) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d 901 (7th Cir. 1991);

*In re Wallace*, 840 F.2d 762 (10th Cir. 1988)) (other citations omitted).  The creditor must prove

by a preponderance of the evidence that a debt is nondischargeable under 11 U.S.C. § 523.  *See*

*Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659 (1991).

> The Sixth Circuit has explained that:
>
> [f]ederal law defines "embezzlement" under section 523(a)(4) as "the fraudulent
> appropriation of property by a person to whom such property has been entrusted
> or into whose hands it has lawfully come." A creditor proves embezzlement by
> showing that he entrusted his property to the debtor, the debtor appropriated the
> property for a use other than that for which it was entrusted, and the
> circumstances indicate fraud.

*Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996), *abrogated on other*

*grounds as explained in National Devel. Servs. v. Denbleyker (In re Denbleyker)*, 251 B.R. 891

(Bankr. D. Colo. 2000) (quoting *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr.

M.D. Tenn. 1982) and *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295 (1895)) and

(citing *Ball v. McDowell (In re McDowell)*, 162 B.R. 136, 140 (Bankr. N.D. Ohio 1993)). To

demonstrate embezzlement a creditor must prove all three elements: "(1) 'that he entrusted his

property to the debtor,' (2) that 'the debtor appropriated the property for a use other than that for

which it was entrusted,' and (3) that 'the circumstances indicate fraud.'" *Cash America Fin.*

*Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) (quoting *In re Brady*,

101 F.3d at 1173). With respect to the third element, the Sixth Circuit has noted:

> The "fraud" required under § 523(a)(4) is "fraud in fact, involving moral turpitude
> or *intentional* wrong." Accordingly, embezzlement claims under § 523(a)(4)
> require "proof of the debtor's fraudulent intent in taking the [creditor's] property."
> As the *Brady* definition suggests, the debtor's fraudulent intent may often be
> shown by circumstantial evidence.

*In re Fox*, 370 B.R. at 116 (quotations and citations omitted). Circumstantial evidence of fraud is

sufficient, but the court must have some evidence of the deceit or scheme to find fraudulent

intent. *In re Fox*, 370 B.R. at 116-117. In *In re Fox* the 6th Circuit Bankruptcy Appellate Panel

provided helpful guidance regarding the analysis of what is required to prove fraudulent intent

for purposes of embezzlement under 11 U.S.C. § 523(a)(4):

> By requiring the Appellant to prove the elements of misrepresentational fraud in
> support of its embezzlement claim, the bankruptcy court imposed an overly
> restrictive definition of "circumstances indicating fraud." Fraud comes in many
> sizes, shapes, and shades of gray. In other contexts, courts have defined "fraud"
> as "encompass[ing] 'any deceit, artifice, trick, or design involving direct and
> active operation of the mind, used to circumvent and cheat another.'" Under this
> broad definition, a creditor may establish circumstances indicating a debtor's
> fraudulent intent, even if the debtor did not make a misrepresentation or
> misleading omission on which the creditor relied.
>
> This is not to say that a debtor's misrepresentations or omissions are irrelevant to
> the embezzlement analysis. To the contrary, misrepresentations, omissions, or
> other concealment of a debtor's actions regarding a creditor's property are
> important circumstances that might pierce the shadows to illuminate a debtor's
> fraudulent intent.
>
> On the other hand, a debtor's fraudulent intent might be negated by circumstantial
> evidence showing "that the debtor used [the creditor's property] openly, without
> attempting to conceal, and had reasonable grounds to believe he had the right to
> so use."

*Id.* (quoting *In re Vitanovich*, 259 B.R. at 877 and *In re Weber*, 892 F.2d 534 (7th Cir. 1989),

*abrogated on other grounds by Grogan*, 498 U.S. 279, 111 S.Ct. 654) (other quotations and

citations omitted).

**a.      Section 523(a)(4) Claim Against Mr. Morse**

The court concludes that the Plaintiff has also alleged the elements of embezzlement

under Section 523(a)(4) against Mr. Morse. The Plaintiff has sufficiently alleged that he loaned

$100,000 to Deck Masters, thereby entrusting it with the Plaintiff's funds. The funds were

entrusted to the Defendant Mr. Morse to construct a residence at Geswein Court. The Plaintiff

alleges that instead, Mr. Morse, through Deck Masters, transferred the funds to himself for

personal expenses and authorized Deck Masters to use the funds to pay pre-existing debts

unrelated to the Geswein Property. The Plaintiff alleges that Mr. Morse misrepresented to the

Plaintiff the purpose of the loan and that he never intended to use the Plaintiff's funds for the

construction at Geswein Court. The Plaintiff has alleged that Mr. Morse immediately transferred

the funds to himself and that he obtained a construction loan for Geswein Court only days after

obtaining the Plaintiff's money. Therefore, the court concludes that the Plaintiff has stated a

claim for embezzlement under Section 523(a)(4) against Mr. Morse. Defendants' motion to

dismiss the Section 523(a)(4) claim against Mr. Morse will be denied.

**b.     Section 523(a)(4) Claim Against Mrs. Morse**

The court concludes that, as with the Section 523(a)(2)(A) claim against Mrs. Morse, the

Plaintiff has failed to allege the elements of a Section 523(a)(4) embezzlement claim against

Mrs. Morse. There is no allegation in the Complaint that Mrs. Morse took the Plaintiff's money

or even that she benefited from it. The court will grant the Defendants' motion to dismiss the

Section 523(a)(4) claim against Mrs. Morse.

**3.     Section 523(a)(6)**

11 U.S.C. § 523(a)(6) states in relevant part:

> A discharge under section 727. . . of this title does not discharge an
> individual debtor from any debt – . . .

> (6) for willful and malicious injury by the debtor to another entity
> or to the property of another entity . . . .

11 U.S.C. § 523(a)(6).

Whether a debt is dischargeable pursuant to 11 U.S.C. § 523(a)(6) is determined by

analyzing federal law. *See, e.g., J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 800-01

(Bankr. N.D. Ohio 2001) (citing *Call Federal Credit Union v. Sweeney (In re Sweeney)*, 264

B.R. 866, 870 (Bankr. W.D. Ky. 2001); *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 388

(Bankr. N.D. Ohio 1999)). 11 U.S.C. § 523(a)(6) provides that a debt that is *both* willful *and*

malicious is nondischargeable. *See* 11 U.S.C. § 523(a)(6). "[T]he judgment must be for an injury

that is both willful and malicious. The absence of one creates a dischargeable debt." *Markowitz*

*v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). The U.S. Supreme Court has

addressed the meaning of "willful" within the context of § 523(a)(6). *Kawaauhau v. Geiger*, 523

U.S. 57, 118 S.Ct. 974 (1998). As summarized by the Sixth Circuit:

> [t]he Court held that "willful" means "voluntary," "intentional," or "deliberate."
> As such, only acts done with the intent to cause injury – and not merely acts done
> intentionally – can cause willful and malicious injury. The Court explained its
> holding by discussing the importance of context:
>
>> The word "willful" in (a)(6) modifies the word "injury," indicating
>> that nondischargeability takes a deliberate or intentional *injury*, not
>> merely a deliberate or intentional act that leads to injury. Had
>> Congress meant to exempt debts resulting from unintentionally
>> inflicted injuries, it might have described instead "willful acts that
>> cause injury." Or, Congress might have selected an additional
>> word or words, i.e., "reckless" or "negligent," to modify "injury."
>> Moreover, as the Eighth Circuit observed, the (a)(6) formulation
>> triggers in the lawyer's mind the category "intentional torts," as
>> distinguished from negligent or reckless torts. Intentional torts
>> generally require that the actor intend "the *consequences* of an
>> act," not simply "the act itself."

*In re Markowitz*, 190 F.3d at 464 (quoting *Geiger*, 523 U.S. at 61-62, 118 S.Ct. at 977).

Following the lead of the Supreme Court in *Geiger*, the Sixth Circuit held that "unless

'the actor desires to cause consequences of his act, or . . . believes that the consequences are

substantially certain to result from it,' he has not committed a 'willful and malicious injury' as

defined under § 523(a)(6)." *In re Markowitz*, 190 F.3d at 464.  Proof of willful behavior must

often be demonstrated through the use of circumstantial evidence. *See In re Jones*, 276 B.R. at

802. The bankruptcy court in *In re Jones* noted that "willful" behavior can "be indirectly

established by the creditor demonstrating the existence of two facts: (1) the debtor knew of the

creditor's lien rights; and (2) the debtor knew that his conduct would cause injury to those rights." *Id.*

As to the element of malice, a malicious injury occurs "when a person acts in conscious disregard of their duties or without just cause or excuse." *In re Jones*, 276 B.R. at 803 (citing *Gonzalez v. Moffitt (In re Moffitt),* 254 B.R. 389, 396 (Bankr. N.D. Ohio 2000)). A finding of maliciousness does not require a determination of ill-will or specific intent. *See In re Trantham*, 304 B.R. at 308. However, malice requires the finding of a level of conduct beyond negligent or reckless behavior. *West Michigan Community Bank v. Wierenga (In re Wierenga)*, 431 B.R. 180, 185 (Bankr. W.D. Mich. 2010) (citation omitted); *see also, JP Morgan Chase Bank, NA v. Algire (In re Algire)*, 430 B.R. 817, 823 (Bankr. S.D. Ohio 2010); *Geiger*, 523 U.S. at 64, 118 S.Ct. 974. A creditor may prove the element of maliciousness by demonstrating that "(1) the debtor has committed a wrongful act, (2) the debtor undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action." *In re Algire*, 430 B.R. at 823 (citing *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1228 (6th Cir. 1991), *abrogated on other grounds by Geiger*, 523 U.S. 57).

In *National Sign and Signal v. Livingston* the district court explained that the § 523(a)(6) exception applies where the injury invades a creditor's legal rights. 422 B.R. 645, 653 (W.D. Mich. 2009) (citing *Steier v. Best (In re Best)*, 109 F. App'x 1, 6 (6th Cir. 2004)). The district court quoted the Sixth Circuit decision in *In re Best* noting:

> Section 523(a)(6)'s term "willful . . . means deliberate or intentional invasion of the legal rights of another, because the word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm to a person." The conduct "must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice . . ."

13

*Livingston*, 422 B.R. at 653 (quoting *In re Best*, 109 F. App'x at 6). The court in *Livingston*

noted that there are three elements that a creditor must demonstrate to state a claim under §

523(a)(6): "(1) the debtor's conduct was willful and malicious, (2) it suffered an invasion of its

legal rights or to the legal rights to its property, and (3) the invasion was caused by the debtor's

conduct." 422 B.R. at 653 (citing *CMEA Title Agency v. Little (In re Little)*, 335 B.R. 376, 383

(Bankr. N.D. Ohio 2005)).

> **a.      Section 523(a)(6) Claim Against Mr. Morse**

In this case the court concludes that the Plaintiff has alleged the requisite elements of his

Section 523(a)(6) claim against Mr. Morse. He asserts that the Defendant Mr. Morse

intentionally deceived him regarding the purpose of the $100,000 loan. The Plaintiff contends

that Mr. Morse misrepresented the intended usage of the $100,000 and instead of using the funds

to build the property at Geswein Court, he used the $100,000 for his own personal use. The

Plaintiff alleges Mr. Morse was without just cause or excuse to use the $100,000 for purposes

other than those outlined in the Note and that the Plaintiff suffered injury in the form of a loss of

his $100,000. These allegations are sufficient to satisfy the elements of Section 523(a)(6).

Defendants' motion to dismiss the Plaintiff's Section 523(a)(6) claim against Mr. Morse will be

denied.

> **b.      Section 523(a)(6) Claim Against Mrs. Morse**

Again, the court concludes that the Plaintiff has failed to allege elements sufficient to

satisfy a Section 523(a)(6) claim against Mrs. Morse. There is no allegation that she caused an

injury to the Plaintiff or even conspired to do so. The court will grant the Defendants' motion to

dismiss the Section 523(a)(6) claim against Mrs. Morse.

14

**B.      The Plaintiff's Section 727 Denial of Discharge Claims**

11 U.S.C. § 727 provides that a debtor shall receive a discharge of all his debts, except in certain limited circumstances. The Plaintiff asserts that several of those exceptions to the right of discharge apply to the Debtor. A plaintiff must prove the elements of 11 U.S.C. § 727(a) by a preponderance of the evidence, and courts generally construe Section 727(a) liberally in favor of the debtor. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *see also, Roberts v. Oliver (In re Oliver)*, 414 B.R. 361, 373 (Bankr. E.D. Tenn. 2009).

**1.      Section 727(a)(3)**

11 U.S.C. § 727(a)(3) precludes a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

Although exceptions to discharge are narrowly construed in the debtor's favor, "'[b]road discretion is vested in the referee to grant or deny a bankruptcy petition based on a determination that books or records are adequate under the terms of the statute and the facts of each case . . . .'" *Dolin v. Northern Petrochemical Co. (In re Dolin)*, 799 F.2d 251, 253 (6th Cir. 1986) (quoting *McBee v. Sliman*, 512 F.2d 504, 506 (5th Cir. 1975)); *see also In re Trantham*, 304 B.R. at 306; *CM Temporary Servs., Inc. v. Bailey (In re Bailey)*, 375 B.R. 410, 415 (Bankr. S.D. Ohio 2007) ("statute is to be liberally construed in favor of the Debtor").

Courts in this Circuit have interpreted 11 U.S.C. § 727(a)(3) "to apply a shifting burden of proof":

The Plaintiff must establish a *prima facie* case showing the Debtor failed
to keep adequate records. For purposes of § 727(a)(3), the Plaintiff is not entitled
to perfect, or even necessarily complete, records. Instead, the Debtor must provide
the Plaintiff "with enough information to ascertain the debtor's financial condition
and track his financial dealings with substantial completeness and accuracy for a
reasonable period past to present." In determining the adequacy of records, the
court can consider the Debtor's education, business experience, sophistication, or
any other relevant factor.

If the Plaintiff has established this *prima facie* case, the burden then shifts
to the Debtor to explain why the failure to keep records, under the circumstances
of the case, is justified. In considering an explanation, the court should consider
both the Debtor's credibility and the reasonableness of the explanation,
considering the debtor's sophistication and the materiality of the records. The
requirement for keeping recorded information is not an unqualified one and
complete disclosure is not always required, but instead it is a question of
reasonableness under the circumstances. However, if disclosure cannot be made
without the keeping of recorded information, the failure to supply the records is
relevant to the policy underlying § 727(a)(3).

The ultimate burden of persuasion, of course, rests with the Plaintiff. The
standard of proof for discharge objections under § 727(a) is by a preponderance of
the evidence.

*CM Temporary Servs., Inc. v. Bailey (In re Bailey)*, 375 B.R. 410, 415-16 (Bankr. S.D. Ohio

2007) (quoting *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (B.A.P. 6th Cir.

1999)) (other citations omitted). In addition, "'[t]he adequacy of debtor's records must be

determined on a case by case basis. Considerations to make this determination include debtor's

occupation, financial structure, education, experience, sophistication and any other

circumstances that should be considered in the interest of justice.'" *In re Strbac*, 235 B.R. at 882

(quoting *United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990)).

Further, "intent is not an element under § 727(a)(3)." *See Hendon v. Lufkin (In re Lufkin)*, 393

B.R. 585, 593 (Bankr. E.D. Tenn. 2008). Bankruptcy courts in this Circuit have created a

standard for assessing the adequacy of recordkeeping that recommends that "the Debtor's

records should be measured 'against the type of books and records kept by a reasonably prudent

debtor with the same occupation, financial structure, education, and experience.'" *Ayers v. Babb*

*(In re Babb)*, 358 B.R. 343, 354 (Bankr. E.D. Tenn. 2006) (quoting *Wazeter v. Michigan Nat'l*

*Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997) (internal quotation omitted)).

     **a.**     **Section 727(a)(3) Claim Against Mr. Morse**

In support of this claim, the Plaintiff alleges in the Complaint:

> In the § 341 meeting of Debtors Morse, Defendant Vincent Morse testified under
> oath that Plaintiff Smith loaned him $100,000.00 as an investment in Deck
> Masters, Inc. in general and not for any certain project or property. Defendant
> Vincent Morse, under oath, was unable to explain satisfactorily where the funds
> he obtained fraudulently from Plaintiff Smith went. Defendant Vincent Morse,
> under oath, was unable to explain what certain payments made immediately after
> Smith's funds went into Deck Master, Inc.'s bank account were for, including but
> not limited to a $30,000.00 cashier's check to Vincent Morse personally on
> August 30, 2012, a $31,000.00 cashier's check on August 30, 2012 with notations
> to Basic Concrete for $10,000.00 and Check's Lumber for $21,000.10, and a
> cashier's check on August 31, 2012 for $8,500.00 with a reference to Case
> Concrete. Defendant Vincent Morse, under oath, was unable to explain transfers
> between Deck Masters, Inc.'s accounts to him personally and transfers to North
> Chattanooga Enterprises, LLC's accounts (of which Defendant Vincent Morse
> was a member). In addition, despite repeated requests for documentation, such as
> invoices, to support alleged payments to suppliers using Smith's funds, Defendant
> Vincent Morse has been unable to produce such documents.

Complaint, ¶ 15. The Complaint asserts that the Defendant Mr. Morse was a businessman who

owned a construction business and who developed property. The Complaint further alleges that

given his experience, Mr. Morse failed to keep adequate records regarding how he disposed of

the Plaintiff's $100,000. Two distributions totaling $60,000 were made from Deck Masters to

Mr. Morse by cashier's check for which no explanation has been provided. These distributions

were made shortly after the Plaintiff's funds were deposited into the Deck Masters' account. Mr.

and Mrs. Morse were officers and the sole shareholders of Deck Masters. When questioned at his

Section 341 meeting, Mr. Morse could not provide any records regarding his companies, Deck

Masters, and North Chattanooga Enterprises, LLC, or explain transfers of funds between those

two companies.

The Complaint further asserts:

Debtor has admitted that he did not use the funds obtained from Plaintiff Smith
for the building of the house at 902 Geswein Court. Yet he is unable to produce
documentation regarding where the proceeds from Plaintiff Smith's loan went or
regarding his or Deck Masters' financial condition and business transactions and
from which Debtors' financial condition and business transactions could be
ascertained. Debtors failed to keep and preserve and to produce documentation
regarding Debtors' financial condition and business transactions from which
Debtors' financial condition and business transactions might be ascertained.

Complaint, ¶ 37.

The court concludes that, based on the allegations of the Complaint, the Plaintiff has

adequately stated the elements of his Section 727(a)(3) claim against Mr. Morse. The court finds

that the Plaintiff has alleged that Defendant Mr. Morse failed to keep documentation of how he

spent the Plaintiff's funds and that the lack of records has not been adequately explained. The

Plaintiff has also alleged that Mr. Morse was a businessman whose experience would not justify

the inexplicable lack of financial records. Therefore, the Defendants' motion to dismiss the

Plaintiff's Section 727(a)(3) claim against Mr. Morse will be denied.

**b.      Section 727(a)(3) Claim Against Mrs. Morse**

The court concludes that the Plaintiff has alleged sufficient elements of a Section

727(a)(3) claim against Mrs. Morse. The Note reflects that Mrs. Morse is the corporate secretary

of Deck Masters. [Doc. No. 1-1, Ex. B]. As such, she should be aware of where the proceeds of

the loan from the Plaintiff went. However, there is no indication that she ever provided any

explanation of the use of the funds. When viewing the Complaint in the light most favorable to

the Plaintiff, Mrs. Morse is an officer and 49% shareholder of the Debtors' primary business who

should have knowledge regarding a business transaction as large as the loan represented by the

Note. Therefore, the court will deny the Defendants' motion to dismiss the Section 727(a)(3) claim against Mrs. Morse.

### 2.    Non-Dischargeability Pursuant to 11 U.S.C. § 727(a)(4)(A)

The Bankruptcy Code provides that a debtor shall receive a discharge from the court unless "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account; . . ." 11 U.S.C. § 727(a)(4)(A). Courts in this Circuit have determined that to state a claim pursuant to § 727(a)(4)(A), a plaintiff must demonstrate by a preponderance of the evidence the following five elements:

> (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) that the statement related materially to the bankruptcy case.

*Clippard v. Jarrett (In re Jarrett)*, 417 B.R. 896, 903 (Bankr. W.D. Tenn. 2009) (citing *In re Keeney*, 227 F.3d at 685).

Statements made by a debtor in his bankruptcy schedules, his personal statement of financial affairs, and at 341 meetings are all statements made under oath.  *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008) (citing *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999)) (other citations omitted). Whether a false statement under oath has been made pursuant to 11 U.S.C. § 727(a)(4)(A) is a question of fact. *In re Jarrett*, 417 B.R. at 903. In *In re Hamo*, the Bankruptcy Appellate Panel for the Sixth Circuit quoted a bankruptcy court regarding the purpose of § 727(a)(4)(A):

> The very purpose of . . . 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction . . . . Neither the trustee nor the creditors should be required to

19

engage in a laborious tug-of-war to drag the simple truth into the glare of
daylight.

. . . .

A discharge is a privilege and not a right and therefore the strict requirement of
accuracy is a small quid pro quo. The successful functioning of the bankruptcy
code hinges upon the bankrupt's veracity and his willingness to make a full
disclosure.

233 B.R. at 725-726 (quoting *Hillis v. Martin, Martin v. Martin (In re Martin)*, 124 B.R. 542,

545, 547-48 (Bankr. N.D. Ind. 1991)).

The Sixth Circuit explained in *In re Keeney* how courts should analyze section

727(a)(4)(A) claims:

" 'Complete financial disclosure' " is a prerequisite to the privilege of discharge.
The Court of Appeals for the Seventh Circuit has explained that intent to defraud
"involves a material representation that you know to be false, or, what amounts to
the same thing, an omission that you know will create an erroneous impression."
A reckless disregard as to whether a representation is true will also satisfy the
intent requirement. " '[C]ourts may deduce fraudulent intent from all the facts and
circumstances of a case.' " However, a debtor is entitled to discharge if false
information is the result of mistake or inadvertence. The subject of a false oath is
material if it " 'bears a relationship to the bankrupt's business transactions or
estate, or concerns the discovery of assets, business dealings, or the existence and
disposition of his property.' "

227 F.3d at 685-86 (citing *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)) (quoting *Williamson*

*v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987); *Beaubouef v. Beaubouef (In re*

*Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)).

   **a.      Section 727(a)(4)(A) Claim Against Mr. Morse**

The Plaintiff alleges that in his Section 341 meeting Mr. Morse "testified under oath that

Plaintiff Smith loaned him $100,000.00 as an investment in Deck Masters, Inc. in general and

not for any certain project or property." This allegation sufficiently alleges a claim under Section

727(a)(4)(A). The Plaintiff contends that Mr. Morse made a false statement regarding the

purpose of the $100,000 loan, under oath in his Section 341 meeting, the Defendant knew the

statement was false when he made it based on the Note, the statement was made with fraudulent

intent to obscure the purpose of the loan, and it related materially to the bankruptcy. The

Defendants' motion to dismiss this claim against Mr. Morse will therefore be denied.

### b.       Section 727(a)(4)(A) Claim Against Mrs. Morse

The court will grant the Defendants' motion to dismiss the Plaintiff's Section

727(a)(4)(A) claim against Mrs. Morse. There is no allegation in the Complaint that Mrs. Morse

made any false statement under oath at the Section 341 meeting. Nor are there any other false

statements by Mrs. Morse that the Plaintiff alleges. Accordingly, the court will dismiss this claim

against Mrs. Morse.

### 3.       Section 727(a)(5)

Section 727(a)(5) allows a court to deny a discharge where "the debtor has failed to

explain satisfactorily, before determination of denial of discharge under this paragraph, any loss

of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). With

respect to a Section 727(a)(5) claim:

> [t]he initial burden is on the Plaintiff to establish the loss or deficiency of assets
> by demonstrating that (1) at a time not too remote from the bankruptcy, the
> Defendant owned identifiable assets; (2) on the day that he commenced his
> bankruptcy case, the Defendant no longer owned the particular assets in question;
> and (3) his schedules and/or the pleadings in the bankruptcy case do not offer an
> adequate explanation for the disposition of the assets in question. The Plaintiff is
> not required to prove that the Defendant acted knowingly or fraudulently, as
> "noticeably lacking from § 727(a)(5) is any element of wrongful intent or, for that
> matter, any affirmative defenses-- § 727(a)(5) simply imposes strict liability."

*Roberts v. Debusk (In re Debusk)*, No. 08-3015, 2008 WL 3904448, at *8 (Bankr. E.D. Tenn.

Aug. 19, 2008) (citing *Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271, 279 (Bankr. W.D.

Ky. 1999) and quoting *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004)).

21

### a.    Section 727(a)(5) Claim Against Mr. Morse

As noted *supra* with respect to his Section 727(a)(3) claim, the Plaintiff has alleged that Mr. Morse has failed to explain what happened to the Plaintiff's $100,000, and he has failed to explain adequately the transfers between himself, Deck Masters and North Chattanooga Enterprises, LLC. The Plaintiff asserts that "[t]he Debtors specifically failed to explain satisfactorily where the funds they received from Plaintiff Smith went, why funds were transferred to Defendant Vincent Morse, and what Defendant Vincent Morse used the funds for once transferred. Defendant Vincent Morse could not explain several other transactions involving the funds or the disposition of the funds after receipt." Complaint, ¶ 46. The court concludes that these allegations adequately state a claim for denial of discharge against Mr. Morse pursuant to Section 727(a)(5). Defendants' motion to dismiss the Plaintiff's Section 727(a)(5) claim against Mr. Morse will be denied.

### b.    Section 727(a)(5) Claim Against Mrs. Morse

With respect to the Section 727(a)(5) claim against Mrs. Morse, the court notes that the Complaint alleges that she is the secretary and a 49% shareholder of Deck Masters. Complaint, ¶ 3. She also signed the Note. [Doc. No. 1-1, Ex. B]. Viewed in the light most favorable to the Plaintiff, these three allegations lead the court to an inference that she benefited from the money transferred to Mr. Morse. The Complaint alleges that both Debtors fail to explain satisfactorily where such funds went. Complaint, ¶ 46. The court notes that part of the problem for the Plaintiff is that the Debtors have provided little or no information regarding what happened to monies deposited with Deck Masters. In addition, a Section 727(a)(5) claim does not require any level of fraudulent intent on behalf of Mrs. Morse. The court concludes that because of the early stage of the case before much discovery has occurred and the need to view the facts in the light most

favorable to the Plaintiff, the court will deny the motion to dismiss the Section 727(a)(5) claim against Mrs. Morse.

### V.       Conclusion

As explained *supra*, the court has determined that it will GRANT in part and DENY in part the Defendants' motion to dismiss.

The court concludes that the Plaintiff has adequately alleged the elements of his Section 523(a)(2)(A), 523(a)(4), 523(a)(6), 727(a)(3), 727(a)(4)(A), and 727(a)(5) claims against Mr. Morse. The Defendants' motion to dismiss these claims against Mr. Morse will therefore be DENIED.

The court concludes that the Plaintiff has failed adequately to allege the elements of his 523(a)(2)(A), 523(a)(4), 523(a)(6), and 727(a)(4)(A) claim against Mrs. Morse. The court will therefore GRANT the Defendants' motion to dismiss these claims against Mrs. Morse. However, the court concludes that the Plaintiff has adequately alleged the elements of his Section 727(a)(3) and 727(a)(5) claim against Mrs. Morse. The court will therefore DENY Defendants' motion to dismiss these claims against Mrs. Morse.

A separate order will enter.

# # #

23